**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAYANA EPPLER,** *individually and on behalf of all others similarly situated* | |
| Plaintiff, | |
| vs. | Civil Action No. |
| **WNK ASSOCIATES, INC.,** **WALEED IQBAL,** and **KHALID IQBAL,** | |
| Defendants. | |

**CLASS-ACTION COMPLAINT**

Plaintiff, Jayana Eppler, by and through undersigned counsel, hereby files this Class-Action Complaint against Defendant, WNK Associates, Inc. ("WNK") and alleges as follows:

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this complaint against Defendants, whose policy and practice of placing telemarketing calls to Pennsylvania residents violates federal and state laws including, but not limited to, the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq*., Pennsylvania Wiretap Act, 18 Pa C.S. § 5725, *et seq*. and § 302 of the Texas Business and Commerce Code ("TBCC").

### BACKGROUND ON THE TCPA,  THE PENNSYLVANIA WIRETAP ACT

2.    Ms. Eppler brings this case to protect her privacy rights, namely the right to be left alone from unwanted telemarketing phone calls.

3.    Eppler brings this suit to get telemarketers like Defendant to stop calling his phone and the putative class members' phones despite the fact Eppler and the putative class members registered their phone numbers on the National Do-Not-Call Registry ("DNC List").

-1-

4.    In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5.    The TCPA affords protections for people who registered their phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their phone after being registered on the National Do Not Call Registry is entitled to recover a penalty of up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c).

6.    From January 2024 through September 2024, approximately 38.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Oct. 2, 2024).

7.    Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

8.     In fact, in 2023 alone, there were over there were over two million do-not-call complaints to the FTC about unwanted telemarketing calls.  Federal Trade Commission, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 8, 2024) *available at* https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited Oct. 4, 2024).

9.    The private right of enforcement of the TCPA is critical to stopping the

proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

10.     Eppler also asserts a class-action claim against Defendant WNK for violation of the Pennsylvania Wiretap Act, Wiretap Act, 18 Pa. C.S. § 5701, *et seq*. and § 302 of the Texas Business and Commerce Code.

11.     The Pennsylvania Wiretap Act prohibits the recording or interception of *inter alia,* telephone communications without the consent of all parties.

12.     The Wiretap Act has certain exceptions, including **for** telemarketers when the "interception is made for the sole purpose of training, quality control or monitoring by the business."

13.     While WNK engages in telemarketing, in this instance, WNK or its agent(s) used a recording to create falsified evidence to make it appear Plaintiff initiated a call to WNK, when it was actually WNK which called her.

14.     Such deceptive conduct is not carried out "for the sole purpose of training, quality control or monitoring by the business" but to shield itself and associated businesses from TCPA liability for unlawful telemarketing conduct.

15.     Accordingly, WNK's recording and interception of telephone communications do not fall within any exception of the Wiretap Act.

16.     Finally § 302 of the TBCC requires any Texas-based business (and any business

which telemarkets in Texas) to register as a "telephone solicitor" with the Texas Secretary of State.

17. Where WNK did not do so, Eppler sues WNK for violation of § 302 of the TBCC.

## II.    PARTIES

18. Jayana Eppler is a natural person and a citizen and resident of Berks County, Pennsylvania.

19. Defendant WNK Associates, Inc. ("Defendant" or "WNK") is a Texas limited liability company whose principal place of business is at 3800 Paluxy Dr., Ste. 400, Tyler, TX 75703.

20. Defendant is a marketing agency which is contracted to place telephone solicitation calls on behalf of third parties, including but not limited to non-parties Major Energy Services, LLC ("Major Energy") and Respond Power, LLC ("Respond Power").

21. WNK acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

22. Defendant Waleed Iqbal ("W. Iqbal") is an individual residing in Tyler, Texas. W. Iqbal is the founder, president, and director of WNK, and is personally engaged in, and helps facilitate, the improper conduct described herein.

23. Defendant Khalid Iqbal ("K. Iqbal") is an individual residing in Tyler, Texas. Upon information and belief, K. Iqbal is an executive of WNK, and is personally engaged in, and helps facilitate, the improper conduct described herein.

## III.    JURISDICTION AND VENUE

24. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising

under the laws of the United States. *See Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

25.     This Court has personal jurisdiction over Defendant. Defendant systematically conducts business in the Commonwealth of Pennsylvania.

26.     Plaintiff has been a citizen of and has resided in this District at all times relevant to this Complaint.

27.     Plaintiff received the calls at issue and experienced the associated harm within this District.

28.     Defendants knowingly and purposefully availed itself to the Commonwealth of Pennsylvania when they called Plaintiff's "267" area code phone number, which is associated with the Commonwealth of Pennsylvania.

29.     Supplemental jurisdiction for Ms. Eppler's state law claims exist under 28 U.S.C. § 1367.

30.     For these reasons, and as set forth in this Complaint, this Court has personal jurisdiction over the parties to this case and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## IV.    FACTUAL ALLEGATIONS

31.     At all times relevant to this action, Ms. Eppler was the subscriber and primary user of a cell phone, the number for which is 267-XXX-7210.

32.     Ms. Eppler used her cell phone for residential purposes, such as speaking with friends and family.

33.     Ms. Eppler has no other residential telephone number.

34.     Eppler's telephone number is not associated with a business, rather is registered to

her individually.

35.     In September 2017, Ms. Eppler registered her cellular telephone number on the National Do-Not-Call Registry in order to obtain solitude from unwanted telemarketing calls.

36.     Beginning in September 2023, Defendants or their agents made telemarketing calls to Ms. Eppler from the spoofed telephone number, 352-683-7757 for the purpose of soliciting electrical services Ms. Eppler did not want or need. A non-exhaustive list of these calls is as follows:

1.  September 14, 2023, at 12:56 p.m. ET;

2.  September 18, 2023, at 11:42 a.m. ET;

3.  September 19, 2023, at 12:12 p.m. ET;

4.  September 22, 2023, at 12:59 p.m. ET; and

5.  September 22, 2023, at 1:00 p.m. ET.

37.     Defendants or their agents also made telemarketing calls to Ms. Eppler from the spoofed telephone number, 323-263-1675, on:

1.  February 2, 2024, at 10:24 a.m. ET;

2.  February 2, 2024, at 10:28 a.m. ET; and

3.  February 2, 2024, at 10:57 a.m. ET.

38.     Defendants placed these calls on behalf of "Major Energy" and "Respond Power."

39.     Eppler did not provide her consent for those calls to be made and did not have any business relationship with WNK, Major Energy or Respond Power before those calls.

40.     Eppler wrote a demand letter with a cease and desist instruction to Major Energy. In response, Major Energy claimed its records showed Eppler *placed the calls*, rather than receiving them.

41. Ms. Eppler knew that representation was not true, and had screenshots to prove she was the recipient of those calls, rather than the calling party. A true and correct copy of those screenshots is attached as Exhibit "A."

42. Accordingly, Plaintiff filed a lawsuit pursuant to these events against Major Energy and Respond Power, captioned *Eppler v. Respond Power, LLC et al.*, 4:24-cv-03687 in the Southern District of Texas.

43. In the course of that litigation, Major Power disclosed its vendor associated with the call to Eppler was Defendant, WNK.

44. Eppler also learned WNK had recorded at least one conversation with Eppler. However, WNK falsified the recording to make it appear as though Eppler was the *caller,* rather than the *called party*.

45. WNK took advantage of the fact that it, as a telemarketer, is permitted (within specific confines) to record telephone conversations without consent of the other party to the communication in Pennsylvania. However, instead of "training, quality control or monitoring by the business" -as permitted under 18 Pa. C.S. § 5704(15)- WNK recorded its conversations in order to falsifying evidence to appear as though *consumers were calling WNK*, rather than *WNK calling consumers*.

46. Defendants' calls and unlawful interception of telephone communications invaded Plaintiff's right to privacy, including the right to be left alone from unwanted telemarketing communications.

47. Furthermore, WNK failed to obtain a certificate that it registered as a telephone solicitor with the State of Texas and nonetheless placed telephone solicitation calls to Eppler and members of the class.

**Class Allegations**

48.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of Rule 23.

49.    Plaintiff seeks to represent the following classes:

**DNC Class:** For the four-year period prior to the filing of this lawsuit to the date of class certification, all persons in the United States:

    a)  who received two or more calls from Defendant during a 12-month period in connection with the marketing of products or services;

    b)  whose number was registered on the DNC List for more than 30 days at the time the calls were received; and

    c)  whose number is registered to an individual and not a business.

**Pennsylvania Wiretap Class:** For the two-year period prior to the filing of this lawsuit to the date of class certification, all persons in the Commonwealth of Pennsylvania

    a)  Has telephone communications which were recorded by WNK, or by an agent of WNK;

    b)  Did not authorize the recording of the communication; and

    c)  Where WNK represented such a person initiated the call, where independent records confirm the person received the call from WNK or its agent(s).

**TBCC Class:** For the two-year period prior to the filing of this lawsuit to the date of class certification, all persons in the United States:

    a) received one or more call dialed by or on behalf of WNK;

    b) where WNK was not registered as a telephone solicitor with the State of Texas.

50.    Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

51.    The members of the proposed class are so numerous that joinder of all members is

impracticable. Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

52.    Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

53.    On information and belief, Defendant has called, and continues to call, people whose numbers are registered on the DNC List. It is reasonable to expect that Defendant will continue to place such calls, absent this lawsuit.

54.    Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a)  Whether Defendants' conduct of placing calls to persons whose phone numbers are registered on the DNC List violates 47 U.S.C. § 227(c);

   b)  Whether the calls were "solicitations" as defined by the TCPA;

   c)  Whether Defendants maintained and implemented legally sufficient protocols for obtaining consumer "consent" to place telemarketing calls to numbers on the DNC List;

   d)  Whether Defendants maintained and implemented legally sufficient protocols for obtaining consumer "consent" to place telemarketing calls using an automated telephone dialing system;

   e)  Whether Defendants' conduct violates the rules and regulations implementing the TCPA; and

   f)  Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

55.    Common questions of law also predominate individualized issues for the Pennsylvania Wiretap Class:

   a)  Whether communications were recorded by WNK;

b)  Whether such communications were altered or modified by or on behalf of WNK; and

c)  Whether the recording of the communication falls within the telemarketing exception to 18 U.S.C. § 5704(15).

TBCC Class:

a) Whether WNK registered as a "telephone solicitor" with the State of Texas; and

b) Whether any exemption to § 302 of the TBCC applies to WNK.

56.     Plaintiff's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and are based on the same legal theories.

57.     Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class he seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

58.     Plaintiff's counsel will vigorously litigate this case as a class action, and Plaintiff and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

59.     A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

60.     In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

61.     Questions of law and fact, particularly the propriety of placing calls to phone numbers on the DNC Registry, recording calls for impermissible purposes and making telephone solicitations from Texas without registering with the state as a "telephone solicitor", predominate over questions affecting only individual members.

62.     Defendants acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT ONE
### Violation of 47 U.S.C. § 227(c) and  47 C.F.R. § 64.1200(C)

63.     Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

64.     The TCPA provides that it is a violation of the law for a person whose phone number is registered on the DNC List to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

65.     The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. See 47 U.S.C. § 227(c)(5).

66.     In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. See 47 U.S.C. §§ 227(c)(5)(A).

67.     By placing calls to Plaintiff and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

68.     Defendants and/or those acting on their behalf knew or should have known that Grant's and the putative class members' phone numbers were registered on the DNC List.

69.     Defendants and/or those acting on their behalf willfully violated the TCPA when placing the calls to Plaintiff and the putative class members' phones.

70.     Plaintiff and the putative class members are entitled to damages of up to $500.00 per violation for each call made by Defendants and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendants willfully violated the TCPA.

## COUNT TWO
**Violation of the Pennsylvania Wiretap Act, 18 P.S. § 5701, *et seq.***

71.     Plaintiff restates, re-alleges, and incorporates herein by reference to the preceding paragraphs as though the same were fully set forth herein.

72.     Defendants falsified their own internal records by wrongfully designating at least one of the calls it made to Plaintiff as inbound rather than outbound.

73.     The Pennsylvania Wiretap Act, 18 P.S. § 5701, *et seq.* establishes a private cause of action for recording or intercepting communications without the consent of all parties.

74.     As an exception 18 P.S. § 5704(15) permits recording of conversations by telemarketers, without consent of all parties if the recording is "made for the sole purpose of training, quality control or monitoring by the business."

75.     However, here, WNK did not record conversations with Plaintiff and putative class members for training, quality control or monitoring. Rather, it recorded conversations in

order to falsify evidence to make it appear as though consumers called WNK, when the reverse is true.

76. Upon information and belief, Defendants did this to aid in avoiding liability under the TCPA.

77. Such deceptive conduct does not fall within the telemarketing exception to the Pennsylvania Wiretap Act.

78. Plaintiff requests that the Court award relief including statutory damages, statutory treble damages and attorneys' fees and costs.

**COUNT THREE:**
**Violation of the Tex. Bus. & Com. Code § 302**

79. The preceding Factual Allegations are incorporated by reference.

80. Jayana Eppler is a "consumer" as defined by Tex. Bus. & Com. Code § 301.001(2).

81. WNK is a "telephone solicitor" as defined by Tex. Bus. & Com. Code § 301.001(5).

82. WNK is a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).

83. WNK is a "telephone solicitor" as defined by Tex. Bus. & Com. Code § 301.001(5).

84. WNK is a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5). Defendants' telephone calls constitute "telephone solicitation" as defined by Tex. Bus. & Com. Code § 302.001(7).

85. Under Tex. Bus. & Com. Code § 302.101, sellers are prohibited from engaging in telephone solicitation from a location in the State of Texas or to a purchaser

located in Texas unless the seller obtains a registration certificate from the Texas Office of the Secretary of State for the business location from which the solicitation is made.

86.     Defendants violated Tex. Bus. & Com. Code § 302.101 by targeting Ms. Eppler and members of the putative classes with continuous, and abusive, telephone solicitation without having a registration certificate from the Texas Office of the Secretary of State.

**PRAYER FOR RELIEF**

87.     WHEREFORE, Ms. Eppler respectfully requests the Court enter judgment in her favor and against Defendants as follows:

1.     Enter an order against Defendants, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Ms. Eppler as the class representative;

2.     Enter an order appointing Ms. Eppler's counsel as class counsel;

3.     Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendants willfully violated Section 227(c) of the TCPA and/or the applicable TCPA regulations;

4.     Enter judgment in favor of Plaintiff and the putative class for all damages available under the Pennsylvania Wiretap Act, 18 Pa. C.S. § 5725(a)(1), including actual compensatory damages, as well as statutory damages of $1,000 per person or $100 per violation, whichever is higher, and putative damages;

5.     Entering judgment against WNK for the acts as complained of in this lawsuit for $5,000.00 per violation under Tex. Bus. & Com. Code § 302.302;

6.     Award reasonable attorneys' fees under the Wiretap Act, 18 Pa.C.S. § 5725(a)(3) and Tex. Bus. & Com. Code § 302.302;

7.     Enter a judgment in favor of Plaintiff and the putative class members that enjoins Defendant from future violations of the TCPA and Pennsylvania Wiretap Act.

8.  Award Plaintiff and the class all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and administration;

9.  Award all applicable pre- and post-judgment interest and court costs; and,

10. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

**JURY DEMAND.**

Demand is hereby made for trial by jury.

Respectfully submitted,

Dated: September 8, 2025

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Pennsylvania ID: 311908
30 E. Butler Ave.
Ambler, PA 19002
Direct: (267) 468-5374
jginsburg@creditlaw.com

Andrew T. Thomasson (NJ No. 048362011, *pro hac vice* anticipated)
THOMASSON PLLC
16414 San Pedro Avenue, Suite 700
San Antonio, Texas 78232-2272
Telephone: (973) 665-2056
Facsimile:  (973) 559-5779
Andrew@Thomassonpllc.com
Francis@Thomassonpllc.com
*Attorneys for Plaintiff, Jayana Eppler*